UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RYAN MACYS,

        Plaintiff,

v.                                    Case No: 6:24-cv-1669-WWB-DCI

CENTURY GOLF PARTNERS GP LLC,

        Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the undersigned for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiff's Fourth Motion for Default Judgment (Doc. 22)** |
| **FILED:** | **July 30, 2025** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**. | |

Plaintiff initiated this case against Defendant for discrimination and retaliation under the Americans with Disability Act (ADA). Doc. 1. Defendant did not respond to the Complaint, and the Clerk entered default. Docs. 11 to 13. Even so, the undersigned denied Plaintiff's initial request for default judgment because Plaintiff did not file a sufficient brief. Doc. 15. Plaintiff then filed Second and Third Motions for Default Judgment on both counts for relief and requested an entry of default in the amount of $46,141.17. Doc. 17, 19. The undersigned denied the requests because the motions were still deficient. Docs. 18, 20.

Pending before the Court is Plaintiff's Fourth Motion for Default Judgment brought pursuant to Federal Rule of Civil Procedure 55(b)(1). Doc. 22 (the Motion). Plaintiff has also

filed an amended proof of service in support of the Motion. Doc. 21. Defendant has not filed a response to the Motion, and the time for doing so has elapsed. The Motion is, therefore, ripe for review.

For the reasons stated in this report, the undersigned recommends that the Court grant the Motion in part.

### I.  Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a plaintiff may apply for a default judgment to either the Clerk or the Court. Fed. R. Civ. P. 55(b).

Before granting such a motion, the courts must "ensure that it has jurisdiction over the claims and parties." *Sec. and Exch. Comm'n v. Martin*, 2019 WL 1649948, at *2 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643203 (M.D. Fla. Apr. 16, 2019); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.]") (quotation omitted).

Once jurisdiction is established, the Court may enter default judgment if "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The showing required in this context "is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (citing *Surtain*,

789 F.3d at 1245); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citation omitted). Thus, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). However, "while a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

## II. Allegations in the Complaint

This case stems from events that allegedly occurred during Plaintiff's employment with Defendant. Doc. 1. Plaintiff claims that he worked for Defendant as a Golf Operations Manager in Florida from March 27, 2023 until June 8, 2023. *Id*. at 3. Plaintiff alleges that in mid-May 2023, he "experienced a flareup of a disability" and "had to leave early in order to treat and address his disability with his psychiatrist." *Id*. Plaintiff claims that the disability is related to "mental health distress" and "[u]nder his psychiatrist's recommendation, [Plaintiff] stayed out of work for a couple of days in order to recover from and address the flareup of his disability." *Id*. Plaintiff claims that he disclosed the disability and "other disabilities he suffers, including gastric upset, to his Manager, Jason Dewildt." *Id*. at 4.

Plaintiff states that on June 8, 2023, Dewildt told Plaintiff that "he and [Defendant] 'would be going our separate ways.'" *Id*. Dewildt allegedly stated, "well, you and I spoke about your [medical] issues and I let you leave early, then you called out the next day due to the same issue."

*Id.* Plaintiff claims that Mr. Dewildt "cited [Plaintiff's] gastric disability as somehow justifying [Defendant's] extreme adverse employment action against [Plaintiff]." *Id.*

Based on the foregoing, Plaintiff contends that Defendant discriminated against him based on his disability and terminated his employment in retaliation for Plaintiff disclosing the disabilities and requesting a "non-burdensome accommodation for same." *Id.* As to the timing of Plaintiff's disclosure, request for leave from work, and his employment termination, Plaintiff asserts that there is a "very close temporal proximity between events." *Id.* at 5.

Overall, Plaintiff claims that Defendant discriminated against him for requiring and requesting an accommodation, and that Defendant terminated him in retaliation for making the request. *Id.* Plaintiff contends that Defendant did not have a "non-discriminatory, non-retaliatory rationale for allowing and participating in the discrimination suffered by Plaintiff." *Id.* at 6.

### III.   Discussion

#### A.   Subject Matter Jurisdiction

"District courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff alleges that Defendant violated the ADA. Thus, the undersigned recommends that subject matter jurisdiction exists.

#### B.   Service of Process

Before entering default judgment, a court must ensure that it has personal jurisdiction over the defendant. Service of process is a jurisdictional requirement; therefore, courts lack jurisdiction over a defendant when the defendant has not been served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Without personal jurisdiction and proper service, the court cannot enter default judgment. *See In re Worldwide Web Sys.*, Inc., 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render

judgment and the judgment is void.") (citing *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 (11th Cir. 1982) (reversing with directions to vacate default against party not properly served)).

Service of Process has been an issue in this case, and the undersigned will briefly set forth the procedural history to show why Plaintiff's previous attempts at default judgment have failed. On March 24, 2025, the undersigned denied Plaintiff's second motion for default judgment because the record did not reflect that Plaintiff served both the summons **and** the Complaint. Doc. 18 at 3. Plaintiff renewed the request for relief but, again, the undersigned found that Plaintiff did not comply with the Court's directive regarding proof of service. Doc. 20. Namely, Plaintiff offered screenshots or print outs regarding service of the summons and the Complaint, but the undersigned was not satisfied that Plaintiff demonstrated that the exhibits were sufficient to establish service of process. *Id*. at 2 to 3.

Also, the undersigned questioned whether the individual served had the ability to accept service on Defendant's behalf. *Id*. at 3 to 5. According to the "Proof of Service," the process server "delivered the documents to Monalisa Hart who identified themselves as the person authorized to accept with identity confirmed by subject stating their name." Doc. 10. And Plaintiff contended that service on this individual was proper under Rule 4(h)(1)(B). Doc. 19 at 3 to 4. Plaintiff argued that there is no individual registered agent as the agent is a corporation, and, therefore, a representative of the registered agent is permitted to accept service on the Defendant's behalf. *Id*. at 4.

The undersigned, however, found that Monalisa Hart's representation that they were the authorized person did not assist the Court in determining if Defendant was properly served pursuant to Rule 4(h)(1)(B). Doc. 20 at 3 (citing *Nguyen v. Tampa Karaoke VIP, Inc.*, 2025 U.S.

Dist. LEXIS 33603, at * 3(M.D. Fla. Feb. 25, 2025) (denying a plaintiff's motion for clerk's default because there was not enough information for the court to determine if the requirements of Rule 4(h)(1)(B) were met by delivering service on someone authorized to accept service as it was unclear who the person authorized was, the person's title, or how he was authorized to accept service on the defendant's behalf)).

The undersigned also noted that Florida Statutes section 48.091(4), regarding an LLC's designation of a registered agent, provides that "[a] person attempting to serve process pursuant to this section on a registered agent that is other than a natural person may serve the process on any employee of the registered agent." *Id*. at 4. Since Defendant's registered agent is a corporation and not a natural person, it appeared to the undersigned that Plaintiff could serve Defendant through that entity's employee. *Id*. But the proof of service did not reflect that Monalisa Hart was an employee of the registered agent, and, thus, the undersigned found that Plaintiff had not adequately established that Defendant was served with process. *Id*. at 4 to 5.

In support of Plaintiff's latest attempt at relief, Defendant submits an amended proof of service. Doc. 21. Defendant's process server now represents that both the summons and Complaint were served on Monalisa Hart, who is identified as an "employee of Corporation Service Company, Registered Agent." *Id*. Based on the foregoing and the new evidence, Plaintiff argues that Monalisa Hart's acceptance of service is proper, and demonstrates that he may proceed with his request for default judgment. Doc. 22 at 4.

Upon due consideration of the Motion and the amended proof of service, the undersigned recommends that Plaintiff has demonstrated that he properly served Defendant. *See* Doc. 21; Fla. Stat. §§ 48.062(2), 48.091(4).

### C. Clerk's Default

On November 7, 2024, the undersigned granted Plaintiff's Motion for Clerk's Entry of Default. Doc. 12. The Clerk subsequently entered the default against Defendant pursuant to Rule 55(a) (Doc. 13), and Defendant has not since appeared or otherwise responded to the Complaint.

In light of Plaintiff's amended proof of service, the undersigned recommends that the Clerk properly entered default.

### D. Liability

#### 1. Disability Discrimination[1]

Plaintiff brings two counts for relief and seeks default judgment on both. Doc. 22. In Count One, Plaintiff alleges that Defendant subjected him to disability discrimination in violation of the ADA. Doc. 1 at 7 to 8. Plaintiff alleges that Defendant terminated him because of his disability or perceived disability and his requests for accommodation. *Id*. at 8. As such, Plaintiff claims he was damaged and entitled to relief. *Id*.

The ADA prohibits employment discrimination against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). To make out a prima facie case of discrimination in violation of the ADA, a plaintiff must show that "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted).

With respect to the first element, Plaintiff identifies his disabilities as "gastric upset" and "mental health distress." Doc. 1 at 3, 4. While these terms may not be the pillar of clarity, the undersigned recommends that Plaintiff has provided enough to sufficiently allege a disability

---

[1] In the Complaint, Plaintiff mentions the Florida Civil Rights Act (FCRA) but does not appear to bring a claim for relief under that law. *See* Doc.1 at 6, 7 to 10. Plaintiff does not address the FCRA in the Motion and, therefore, the undersigned will address his claims pursuant to the ADA.

under the ADA. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). The ADA considers working to be a major life activity. 42 U.S.C. § 12102(2). And here, Plaintiff alleges that he was out of work due to his mental health distress and his psychiatrist's recommendations. Doc. 1 at 3 to 4. Taking the allegations as true, the undersigned finds that the first element of his disability claim is met.

Plaintiff's problem, however, is that he provides nothing but conclusory statements with respect to the second element. Under the ADA, a "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Thus, if [the plaintiff] is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Davis*, 205 F.3d at 1305. And essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus. LLC*, 492 F.3d 1247, 1257 (11th Cir. 2007) (quotation marks omitted).

Plaintiff pleads only that he was a Golf Operations Manager, and provides no further information regarding his job or its function. *See* Doc. 1. Specifically, Plaintiff alleges in a vague manner that he was "ready, willing, and able to perform his job duties," but does not state what the job duties were in any regard. *See id*. at 5. Plaintiff does not mention in the pleading that he is a qualified individual, and alleges simply that he could perform the essential functions of his position with or without reasonable accommodation. *Id*. at 5, 6.

The undersigned finds that Plaintiff's conclusory allegations regarding the essential functions of the job do not warrant entry of default judgment. *See Rodriguez v. Fla. Arthritis Ctr.,*

*P.L.*, 2024 U.S. Dist. LEXIS 209991, at *7 to 8 (M.D. Fla. Nov. 19, 2024) (denying a motion for default judgment in part because the plaintiff did not provide any factual allegations to demonstrate that she was a qualified individual as "[n]othing [was] mentioned regarding the essential functions of her role or whether her alleged disability impacted her ability to perform those functions"); *Holmes v. Silver Line Bldg. Products LLC*, 2020 WL 9597788, at *5 (N.D. Ga. Aug. 5, 2020) ("Because Plaintiff has 'failed to allege sufficient facts to support each element of [her] ADA claims[s],' default judgment as to those claims is improper.") (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248-49 (11th Cir. 2015)); *Farrell v. Reno*, 983 F.Supp. 1099, 1105 (M.D. Fla. Oct. 27, 1997) ("For Plaintiff to establish a prima facie case under the Americans with Disabilities Act. . ., he must plead facts and bring forth evidence, not mere conclusory allegations a case that: he is a qualified individual with a disability, as defined under the ADA; he is qualified to perform the essential functions of employment with or without accommodation; and, he suffers discrimination because of his disability.")

Also, Plaintiff does not sufficiently address the "qualified individual" element in the Motion. Plaintiff states that he "had been performing his essential job functions successfully, absent a small amount of time off from work, which was being requested as a reasonable accommodation." Doc. 22 at 7 (citing Doc. 1 at ¶¶ 15, 17, and 21). He concludes that "[h]e was fully capable and qualified to perform his essential job functions." *Id*.

It is not clear how Plaintiff construes Paragraphs 15, 17, and 21 of the Complaint to reflect that he performed his job successfully. *See* Doc. 1 at 3, 4. And the paragraphs have nothing to do with his job functions; essential or otherwise. *See id*. In any event, these paragraphs do not set forth any facts that support his allegation that he could perform the "essential job functions" with or without reasonable accommodations. *See id*. As such, the undersigned finds that Plaintiff does

not sufficiently demonstrate how the well-pleaded allegations of the Complaint establish this element of the cause of action and, therefore, the Motion is due to be denied. *See Marutani-Holdren v. Allstate Fire*, 2025 WL 1685414, at *1 (M.D. Fla. June 16, 2025) (finding that the court was unable to determine whether the plaintiff was entitled to default judgment because the motion did not set forth the elements of the claims or show how the well plead allegations established each of the elements) (citing *Hernandez v. Andujar*, 2023 WL 2931712, at *1 (M.D. Fla. Jan. 24, 2023) ("In order to establish liability, the plaintiff must identify the elements of each claim upon which she seeks default judgment, with proper legal citations, and after each element state the admitted facts supporting satisfaction of that element.").

In sum, the undersigned finds the Motion to be deficient on this element, and a review of the Complaint reflects an absence of facts related to the essential functions of the job. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Simply alleging that Plaintiff could perform the essential functions of the job with or without a reasonable accommodation is not enough. Accordingly, the undersigned recommends that the Court deny the request for default judgment with respect to Plaintiff's ADA discrimination claim. *See Williams v. Cowart Mulch Prods., Inc.*, 2024 U.S. Dist. LEXIS 224077, at *4 to 5 (M.D. Fla. Dec. 11, 2024), *report and recommendation adopted by*, 2025 U.S. Dist. LEXIS 6214 (M.D. Fla. Jan. 13, 2025) (finding that the plaintiff did not establish liability on the ADA discrimination claims because the plaintiff provided only conclusory allegations that he was able to perform the essential functions of the job, and failed to allege "*why* he was qualified or *how* he could perform the essential functions of his employment") (emphasis in original); *see also Lane v. Hillsborough Cty. Hosp. Auth.*, 1997 WL 394897, at *8 (M.D. Fla. July 10, 1997) (dismissing an ADA claim where a plaintiff made "no averments beyond

conclusory allegations that he is a qualified individual with a disability under the ADA"); *Robertson v. Palm Beach Cnty.*, 2025 U.S. Dist. LEXIS 141855, at *9 to 10 (S.D. Fa. July 24, 2025) (finding that a plaintiff's conclusory assertion that she was an "otherwise qualified disabled person" did not satisfy Rule 8(a)(2) as the plaintiff did not include "a single detail regarding what [the plaintiff] did in her job," failed to "say anything about the essential functions of her position," and did not "allege any facts suggesting she would have been able to fulfill the essential functions of her job if afforded 'additional sick leave'").

### 2. Retaliation

Plaintiff also brings an ADA retaliation claim. The ADA prohibits employers from retaliating against an employee who "has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). To state a claim for ADA retaliation, Plaintiff must allege (1) that he engaged in a statutorily protected activity or expression; (2) that he suffered an adverse employment action; and (3) a causal connection between the protected acts and the adverse employment action. *See Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018). Notably, "[a] plaintiff is not required to show that she has an actual disability under the ADA to establish this element." *Bright v. City of Atlanta*, 2025 U.S. Dist. LEXIS 208940, at *33 (N.D. Ga. Oct. 23, 2025). The ADA's retaliation provisions are not limited to "qualified individuals." *See* 42 U.S.C. § 12203(a); *see also Corning v. LodgeNet Interactive Corp.*, 896 F.Supp. 2d 1138, 1152 n. 9 (M.D. Fla. 2012) ("[A] plaintiff need not be 'disabled' or a 'qualified individual' as defined by the ADA to succeed on a retaliation claim.").

In the instant case, Plaintiff claims that he was "terminated as a direct result of his disclosures and his requests for accommodation for his disabilities." Doc. 1 at 9. Again, Plaintiff claims that he took time off because he "experienced a flareup of a disability, specifically mental health distress, and had to leave early in order to treat and address his disability with his psychiatrist." *Id*. at 3. Plaintiff alleges that he stayed out from work for a couple of days to "recover," and "disclosed his disability and other disabilities he suffers, including gastric upset, to his [m]anager[.]" *Id*. at 3 to 4. Within a few weeks of these events, Plaintiff claims that his manager advised him that Plaintiff's employed was terminated; "elaborated" that they spoke about his medical issues and that Plaintiff took time off work; and "also cited [Plaintiff's] gastric disability as somehow justifying [Defendant's] extreme adverse employment action against [Plaintiff]." *Id*. at 4.

Based on the foregoing, the undersigned finds that Plaintiff has sufficiently alleged the first element. "The first *prima facie* element requires a plaintiff to show that she engaged in a protected expression as it is defined under the ADA." *Bright*, 2025 U.S. Dist. LEXIS 208940, at *32 to 33. And here, Plaintiff's allegations regarding his disclosure of his disability and related request for leave or time off is protected activity under the ADA. *See Wolowitz v. Seacrest Servs., Inc.*, 2024 WL 3511545, at *4 (S.D. Fla. July 9, 2024), *report and recommendation accepted with clarification by*, 2024 WL 3509604 (S.D. Fla. July 23, 2024) ("As a general rule, a request for a reasonable accommodation under the ADA constitutes 'protected activity' for purposes of a retaliation claim.") (citing *Christophe v. Walmart, Inc.*, 2022 WL 1092209, at *3 (M.D. Fla. Apr. 12, 2022) (finding plaintiff engaged in protected activity "by notifying Defendant of her. . . request for a reasonable accommodation"); *see also Davis v. Wal-Mart Assocs.*, 2022 WL 21781947, at *7 (M.D. Fla. Sept. 16, 2022) (finding unpersuasive a defendant's argument that *Calvo v.*

*Walgreens Corp.*, 340 F.App'x 618, 625-26 (11th Cir. 2009) precludes an ADA retaliation claim based on a denial of reasonable accommodations because even though the plaintiff claimed that requesting a reasonable accommodation was her protected activity, she also claimed that termination was the adverse employment action);[2] *Moore v. MSB of Destin, Inc.*, 2023 WL 4743276, at *3 (N.D. Fla. July 11, 2023) (finding that a plaintiff alleged that he requested a reasonable accommodation, which is sufficient to plead that he engaged in a statutorily protected activity); *Whitlock v. Cmty. Sols. Ins.*, 2022 WL 22805109, at *6 (N.D. Ga. Mar. 23, 2022), *report and recommendation adopted by*, 2022 WL 22805081 (N.D. Ga. Aug. 22, 2022) (finding that a plaintiff plausibly alleged that he engaged in protected activity under the ADA by "requesting time off and/or a schedule change to accommodate his disability" and that the defendant fired him for making the request). As such, the undersigned finds that Plaintiff sufficiently alleged that he engaged in a protected activity under the ADA.

As to the second element, Plaintiff claims that he was terminated from his employment. The undersigned finds that Plaintiff sufficiently pled that he suffered an adverse employment action. *See Moore v. Hillsborough Bd. of Cnty. Comm'rs*, 544 F. Supp. 2d 129, 1308 (M.D. Fla.

---

[2] In *Calvo*, the Eleventh Circuit stated that:

> In *Stewart*, we refused to address the plaintiff's "retaliation" claims that were based on simple refusals to accommodate her. We stated that "[i]n our view, the acts Stewart describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim." *Id*. at 1288. *See also Lucas*, 257 F.3d at 1261 (rejecting a retaliation claim based on a failure to reasonably accommodate because it "merely reclothes Lucas' ADA discrimination claim"). In other words, the gist of Calvo's *discrimination* claim is that Walgreens refused to accommodate her because of her disability. Walgreens did not refuse to accommodate Calvo because she requested accommodation. *Cf. CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1964, 170 L. Ed. 2d 864 (2008) (Thomas, J., dissenting) (observing that discrimination is based on status, while retaliation is based on action).

340 Fed. App'x 618 at 625-26.

2008) ("To qualify as an 'adverse employment action,' 'the action must either be an ultimate employment decision or else must meet some threshold level of substantiality. Ultimate employment decisions include decisions such as termination, failure to hire, or demotion.") (citations omitted); *see also*, *Batchelder v. Coll. Park Rehab.*, 2024 U.S. Dist. LEXIS 121081, at *7 (M.D. Fla. July 10, 2024) (upon consideration of a motion for default judgment, finding that the second element of an ADA retaliation claim was satisfied as the plaintiff alleged that she was terminated).

Finally, the undersigned finds that Plaintiff has sufficiently alleged a causal connection between the request for time off (the protective activity) and his termination (the adverse employment action). Plaintiff alleges that he disclosed his disabilities to his manager, and the manager referenced his request for time off and his disabilities as the reason for the termination. Even if the manager's remarks are not construed as the reason for the termination, Plaintiff allegedly disclosed his disability and requested time off to "recover" within close proximity to his termination. As a panel of the Eleventh Circuit recently explained:

> As to the third causation element, the plaintiff need only "prove that the protected activity and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation marks, ellipses, and brackets omitted). This element is satisfied if the plaintiff "provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Id.* (quotation marks and ellipses omitted). For temporal proximity alone to be sufficient circumstantial evidence of a causal connection, it "must be very close." *Id.* (quotation marks omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.* This Court has concluded that a one-month period between the protected activity and the adverse action was "not too protracted," but that "a three to four month disparity" was insufficient to show a causal connection. *Id.*

*Oirya v. Mando Am. Corp.*, 2024 WL 1462500, at *7 (11th Cir. Apr. 4, 2024). Plaintiff in the instant case was fired within a few weeks of the disclosure and request for time off. In sum, the

undersigned recommends that Plaintiff's allegations regarding his manager's comments and the temporal proximity are enough to sufficiently allege the third element of an ADA retaliation claim.

Having reviewed the Motion and the Complaint, the undersigned recommends that Plaintiff has established liability on this claim.

### E.  Damages

Since Plaintiff's allegations, which are deemed admitted, establish liability as to at least one claim, the undersigned will address Plaintiff's claims for damages.  In the default judgment context, "A court has an obligation to assure that there is a legitimate basis for any damage award it enters."  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44.  However, no hearing is needed "when the district court already has a wealth of evidence . . . such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).  *See also Wallace*, 247 F.R.D. at 681 ("[A] hearing is not necessary if sufficient evidence is submitted to support the request for damages.").

Plaintiff claims that under the ADA he is "entitled to lost wages in the form of back pay and front pay, compensatory damages, and punitive damages."  Doc. 22 at 12.  Plaintiff has submitted an affidavit in support of his request which includes his calculations of the claimed

damages. Docs. 22, 22-1. On review, however, the undersigned is not satisfied that Plaintiff has provided the Court with sufficient information to award damages at this juncture.

For one, Plaintiff addresses damages under the ADA but does not address specific relief under each count. If the Court agrees with the undersigned that Plaintiff is entitled to default only on Count Two, the undersigned recommends that Plaintiff should brief the available remedies tailored to that claim. The undersigned does not reach the merits on damages at this time, but at least notes that there seems to be a distinction between relief available for an ADA discrimination claim versus an ADA retaliation claim. *See Moore*, 2023 WL 4743276, at *6 (striking the plaintiff's request for compensatory and punitive damages because those damages are not available in ADA retaliation cases); *Williams*, 2024 U.S. Dist. LEXIS 224077, at *7 to 8 (finding that backpay is the only form of damages that may be awarded as a result of the recommendation that the plaintiff did not sufficiently support an ADA discrimination claim) (citing *Ramirez v. Standco, Inc.*, 2024 WL 2599276, at *8 n.3 (N.D. Fla. Apr. 30, 2024) ("That said, Defendant is correct that the ADA does not authorize compensatory damages for retaliation claims.")).

Even if Plaintiff does not seek compensatory or punitive damages, the undersigned still finds it necessary for him to address further his available remedies as to the specific remaining claim. *See Gonopolsky v. Korchak*, 2007 WL 1549429, at *2 (M.D. Fla. May 25, 2007) (denying a plaintiff's motion for entry of final default judgment, and finding that the plaintiff must submit evidence of the amount of damages awardable as to each cause of action).

Further, the undersigned is not satisfied that the Court has sufficient information to accept Plaintiff's damages calculation. Plaintiff's damages calculation is based on a 50-hour work week that includes 10 hours of overtime per week. Doc. 27-1. Plaintiff claims that from June 8, 2023 (the date Defendant terminated him) to November 8, 2024 (the date the Clerk entered default)

Plaintiff should have earned $65,120.00 (74 weeks x $880.00 [$16.00 hr x 40 hrs + $24.00 overtime hrs x 10 hrs].[3]  Plaintiff alleges that he "regularly worked 50 hours per week," and requests that the Court calculate damages based on the past overtime figure.  In the undersigned's denials of Plaintiff's requests for default judgment, the undersigned noted that Plaintiff did not adequately brief the overtime issue.  Docs. 15 at 3; 18 at 4 to 5.

Though Plaintiff now provides the Court with some case law (Doc. 27), the undersigned still questions whether awarding damages based on projected overtime is appropriate.  Assuming Plaintiff is correct, the undersigned deems it necessary for Plaintiff to provide evidence of what he believes constitutes "regularly worked" overtime.  Plaintiff argues that:

> Unlike the 8th Circuit case, Thorson v. Gemini, Inc., 205 F.3d 370, 384 (8th Cir. 2000), which ruled that the claimant's claim for lost overtime was 'too speculative', Pagan-Colon was able to show a consistently amount of overtime hours worked over a period of time, hence the court's award of lost overtime wages.  This case more closely resembles Pagan-Colon, as Plaintiff has stated that he worked a consistent number of overtime hours throughout his tenure with Defendant.

Doc. 22 at 15 (emphasis in original).  If that is the standard, and the undersigned does not necessarily find that it is, then Plaintiff must provide evidence to show that the overtime was consistent or regular as he claims.

Accordingly, the undersigned recommends that the Court deny Plaintiff's request for damages at this time.

**F. Costs**

Plaintiff also claims that he incurred costs in "the amount of $465.53 as follows: $405.00 filing fee; $59.89 service of process fee; and $0.64 for postage."  Doc. 22 at 3.  Plaintiff has

---

[3] In his affidavit, Plaintiff states that he "earned $880.00 per week with Defendant ($16.00 per 40 hours equals $640.00, and $24.00 per 10 hours of overtime equals $440.00)."  Doc. 22-1.  The "$440.00" appears to be a typo as $24.00 x 10 = $240.00, and $640.00 + $240.00 = $880.00.

attached to the Motion an exhibit entitled "Bill of Costs," which is a chart reflecting these costs. Doc. 22 at 24.

The undersigned recommends that Plaintiff's request for costs is premature as no judgment has been entered, and he has improperly attached the request to the Motion. As one court in this district explained in its denial of a defendant's motion for costs:

> Despite the fact that 28 U.S.C. § 1920 allows the Court or the clerk to tax costs, Federal Rule of Civil Procedure 54(d)(1) makes plain the Clerk taxes initially. Commentators have observed 'the function of the court [pursuant to Rule 54(d)(1)] in the process of taxing costs is merely to review the determination of the clerk. Therefore, nothing normally can come before the court until the clerk has acted and an objection has been made.' 10 Wright & Miller, Federal Practice and Procedure § 2679 (4th ed. 2018); *accord Sharon v. Yellow Freight Sys., Inc.*, 985 F. Supp. 1274, 1275 (D. Kan. 1997) (the clerk taxes the costs; the court reviews de novo the clerk's assessment of costs). A 'motion to tax cost' runs counter to Rule 54(d)(1), insofar as a 'motion' is '[a] request for a court order,' as opposed to a bill of costs, which is what is required for the taxation of costs. Fed. R. Civ. P. 7(b).

*Amiel v. Lakeland Reg'l Med. Ctr.,* 2019 WL 2552595, at *1 (M.D. Fla. Apr. 3, 2019).

In accordance with this guidance, the undersigned recommends that the Court deny Plaintiff's request to include the costs within the final default judgment. If the Court enters judgment in Plaintiff's favor, then Plaintiff may then file a Bill of Costs pursuant to Rule 54(d)(1).

### IV.  Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the Court:

1. **GRANT in part** Plaintiff's Motion for Default Judgment (Doc. 22) to the extent that the Court find that Plaintiff has established liability with respect to Count Two of the Complaint; **DENY** Plaintiff's request for default judgment as to Count One; and **DENY without prejudice** the remainder of the Motion; and

2. If the Court enters an order adopting this report and recommendations as to liability, **REFER** the issue of damages to the undersigned to conduct all appropriate

proceedings, including an evidentiary hearing, and thereafter to issue a report and recommendation on entitlement and quantification of damages.

### NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on November 14, 2025.

_____
DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE